## UNITED STATES v. STROMBERGER.

No. 1123.

District Court of Alaska. Fourth Division. Fairbanks.
June 20, 1940.

Harry O. Arend, Asst. U. S. Atty., of Fairbanks, for plaintiff.

Robert C. Ilsley, of Juneau, for defendant.

PRATT, District Judge.

Under a law of Congress, specifically applicable to the Territory of Alaska and to regulations made under said law, the defendant was convicted of a violation of the game law and sentenced to six months' imprisonment and to pay a fine of $150 by the commissioner and ex-officio justice of the peace for the Fairbanks precinct, division aforesaid.

The defendant served his jail sentence and, after serving thirty days solely for the nonpayment of his fine, duly applied to said commissioner for a discharge from imprisonment under Section 641, Title 18, U.S.C.A., as amended by Act of Congress, approved May 24, 1935, 49 Stat. 289, 48 U.S.C.A. § 101a. The commissioner denied the application upon the 18th of June, 1940. An appeal was regularly taken from such judgment to this court. Upon a hearing on June 20, the defendant made a showing which would entitle him to a discharge under said Section 641, providing the section, as amended, refers to one imprisoned for the nonpayment of a fine imposed by a commissioner and ex officio justice of the peace in Alaska.

Section 641, U.S.C.A., Title 18, was Section 5296 of the Revised Statutes of 1878. Its material parts for this consideration are: "When a poor convict, sentenced by any court of the United States to be imprisoned and pay a fine, * * * has been confined in prison thirty days, solely for the nonpayment of such fine, * * * such convict may make application in writing to any commissioner of the United States court * * * setting forth his inability to pay such fine * * *. If on examination it shall appear to him that such convict is unable to pay such fine * * * and that he has not any property * * * such convict shall be discharged; * * *."

By an Act of Congress, approved May 24, 1935, 49 Stat. 289, the following sentence was added to said Section 641, above mentioned: "The District Court of the Territory of Alaska shall be deemed a court of the United States, and the commissioners appointed by the judges of the said District Court of the Territory of Alaska under the provisions of title I, chapter 1, section 6, of the Act of June 6, 1900 [section 104 of this title], shall be deemed commissioners of a United States court, within the intent and meaning of this section." 48 U.S.C.A. § 101a.

The last-mentioned amendment clearly brought one serving a fine imposed by the District Court of the Territory of Alaska within the provisions of Section 641, but a mere reading of the amendment does not extend the provisions of said Section 641 to the defendant in this case.

By an Act of Congress, entitled, "An Act To define and punish crimes in the District of Alaska and to provide a code of criminal procedure for said district," approved March 3, 1899, 30 Stat. 1253, Secs. 1 to 481, Carter's Annotated Codes; Section 1881 et seq., Compiled Laws of Alaska 1913; Section 4755 et seq., Compiled Laws of Alaska 1933, a Criminal Code and Code of Criminal Procedure was set up. The Code of Criminal Procedure, Sections 1 to 481, Carter's Alaska Code, is divided into forty-four chapters.

Chapter 20, Carter's Alaska Code, entitled "Of the Execution," Section 197, page 78, provides: "That when the judgment is imprisonment in the penitentiary, the marshal shall deliver the body of the defendant, together with a copy of the entry of judgment, to the keeper of such prison; and when the judgment is imprisonment in the county jail, or a fine, and that the defendant be imprisoned until it be paid, the judgment must be executed by the marshal."

Chapter 40, entitled "Of Justices of the Peace," Section 408, page 112, provides: "That in addition to the

commissioners appointed by the President of the United States in pursuance of Acts of Congress now in force, or that may be hereafter enacted, the judge of the district court of said District may appoint commissioners, who shall reside at such places as he may designate in the order of appointment, and who shall perform the duties and exercise the powers conferred upon justices of the peace by this Act."

Chapter 41, section 410, provides that the justice's court has jurisdiction of larceny where punishable by imprisonment in the county jail or by fine, assault and assault and battery, and any misdemeanor punishable by imprisonment in the county jail or by fine or both.

Chapter 42, entitled "Criminal Action in Justices' Courts," Section 411, page 113, provides: "That a criminal action in a justice's court is commenced and proceeded in to final determination, and the judgment therein enforced, in the manner hereinbefore provided, except as in this chapter otherwise specially provided."

There is nothing else in said Chapter 42 relative to the enforcement or execution of a judgment to pay a fine.

It would appear very clearly, therefore, that the provisions of said Section 197, Chapter 20, as to the marshal executing the judgment, and Section 190, Chapter 19, Carter's Alaska Code, as to imprisonment for the nonpayment of a fine, were intended by Congress to govern the entry and execution of a justice's court judgment.

Section 430 in said Chapter 42 sets forth a form of judgment of conviction in a justice's court and provides where a fine is imposed the defendant "be imprisoned in such jail until such fine * * . * be paid, not exceeding —— days." This form is in substantial compliance with the terms of section 190, of Chapter 19, Carter's Alaska Code.

Chapter 43, Sections 441 to 452, provides for an appeal from the justice's court to the District Court and the

trial of the cause de novo. It further provides that if an appeal is dismissed the District Court must give the judgment as given in the court below.

The above-mentioned Code of Criminal Procedure is one Code for the District Court and the commissioner, both as ex officio justice of the peace and as an examiner at preliminary hearings and proceedings to keep the peace in which cases his order is that the defendant, if he be not discharged, be bound over to answer in the District Court. The commissioner is also given authority to issue writs of habeas corpus, returnable before the District Court. Certain limitations as to the jurisdiction and procedure in the justice's court make many sections of the Criminal Code apply only to the District Court.

Section 6 of the Political Code, passed by Congress and approved June 6, 1900, Section 6, Carter's Alaska Code, page 133; Section 366, Compiled Laws of Alaska 1913; Sections 1108, 1109, Compiled Laws of Alaska 1933, 48 U.S.C.A. §§ 104, 108, provides:

"The respective judges of the court shall appoint, and at pleasure remove, clerks and commissioners in and for the district [Territory], who shall have the jurisdiction conferred by law in any part thereof * * *.

"The commissioners shall be ex officio justices of the peace, recorders, and probate judges, and shall perform all the duties and exercise all the powers, civil and criminal, imposed or conferred on the United States commissioners by the general laws of the United States and the special laws applicable to the district [Alaska]."

It thus appears that Congress intended that the commissioner, appointed by the judge of the District Court, should be, in a measure, an arm of the District Court, exercising his limited jurisdiction under such of the provisions of the District Court as were applicable to the situation.

Thus, when Congress, by the act approved May 24, 1935, 49 Stat. 289, 48 U.S.C.A. § 101a, made the in-

digent convict provisions of Section 641, Title 18, U.S. C.A., applicable to the District Courts in Alaska, it had the effect of adding to the section on the execution of judgments (said Section 197) a proviso consistent with the provisions of Section 641, Title 18 U.S.C.A.

Thus said Section 197 (Section 5414, C.L.A.1933) now reads in effect as follows: When the judgment is that the defendant be imprisoned until a fine be paid, the judgment must be executed by the marshal. Provided, however, that when a poor convict, sentenced to be imprisoned and to pay a fine, has been confined in prison thirty days solely for the nonpayment of such fine, such convict may make application in writing to any commissioner in the district where he is imprisoned, setting forth his inability to pay such fine, and, after notice to the district attorney, the commissioner shall proceed to hear and determine the matter. If on examination it shall appear to him that such convict is unable to pay such fine and that he has not any property exceeding $20 in value, except such as is by law exempt from being taken on execution for debt, the commissioner shall administer to him the following oath: " 'I do solemnly swear that I have not any property, real or personal, to the amount of $20, except such as is by law exempt from being taken on civil process for debt by the laws of Alaska; and that I have no property in any way conveyed or concealed, or in any way disposed of, for my future use or benefit. So help me God.' " Upon taking such oath such convict shall be discharged; and the commissioner shall give to the keeper of the jail a certificate setting forth the facts.

Did Congress intend that there should be added to the above-mentioned proviso the statement that the section on the execution of judgments, as amended, should apply to the District Court but should not apply to judgments of the justice's court, which court should be governed by the section as it existed before amendment?

To limit the application of the amendment of May 24, 1935, to convicts serving out fines imposed by the District Court would be in the nature of special legislation.

██ "A special law is one which relates to particular persons or things of a class, or which operates on or over a portion of a class instead of all of the class." 59 C.J. 735.

To single out of the class of poor convicts imprisoned for the nonpayment of fines, those who were being held under a judgment of the District Court to give them the special privilege of terminating their imprisonment, whereas the remainder of the class who were serving out their fines on judgments imposed in the justice's court for the same class of crimes would be special legislation and appear to be a discrimination not based upon any good reason or principle of fairness.

██ Most of the states of the Union have provisions in their Constitutions forbidding them to pass special laws when general laws could cover the subject. By an act approved July 30, 1886, 24 Stat. 170, page 99, § 125, C. L.A.1933, 48 U.S.C.A. § 1471, Congress specially prohibited the Legislatures of the Territories of the United States, then established or thereafter to be established, from passing special laws in the following cases: for the punishment of crimes and misdemeanors; remitting fines, penalties, or forfeitures; and in all other cases where a general law could be made applicable. This act was made specially applicable to Alaska when provision was made for a Legislature therefor.

While Congress is not limited in the above respect as to special laws by the Constitution of the United States, it has expressed its disapproval of such laws, and it will not be presumed that it intended to pass a special law when a general law could be made applicable unless the intention is clear.

■ To ascertain the intention of Congress with reference to a particular law, the courts have not failed to take advantage of the information available, though it might lead to a different conclusion from that which would follow from a narrow inspection of the wording of the act.

In Summers v. United States, 231 U.S. 92, 34 S.Ct. 38, 58 L.Ed. 137, 4 Alaska Fed. 143, the intention of Congress was in issue.

The Penal Code, approved March 3, 1899, 30 Stat. 1253, which Congress passed for the Territory of Alaska, defined certain crimes. It stated that "the penal and criminal laws of the United States of America and the procedure thereunder relating to the District of Alaska shall be as follows". The crimes mentioned did not include the crimes defined in Section 5209 of the Revised Statutes of the United States, 12 U.S.C.A. § 592, relating to national banks.

The Code of Criminal Procedure contained in the Act of Congress, approved May 3, 1899, provided: "That proceedings for the punishment and prevention of the crimes defined in Title I [Penal Code] of this Act shall be conducted in the manner herein provided." 30 Stat. 1285, § 1.

Therein it was stated that an indictment should set forth but one crime.

Summers was indicted for fifty-six separate violations of the national banking act in the same indictment. The Government maintained that, as the Alaska Penal Code did not mention the crimes prohibited by said Section 5209, R.S.U.S., the Code of Criminal Procedure for Alaska prohibiting an indictment from charging more than one crime did not control but the same was within the general law of the United States which permitted the joinder of such counts in the same indictment.

The Supreme Court held that a dual procedure for the prosecution of different crimes within the same Territo-

rial jurisdiction was undesirable and that the systematic character of the Alaska Code indicated a contrary intention.

The judgment was reversed, with directions to sustain the demurrer to the indictment.

In Green v. Peak, 62 App.D.C. 176, 65 F.2d 809, 810, the Court of Appeals for the District of Columbia had before it an appeal from the Supreme Court of the District of Columbia.

The police court and the Supreme Court of the District of Columbia had concurrent jurisdiction with reference to the National Prohibition Act, 27 U.S.C.A. § 1 et seq. In the police court Green had been fined $500 or, in default, to serve 180 days in jail for a violation of that act and was being confined in jail under a local statute applying to the police court alone. It provided that in all cases where a fine was imposed the court might, in default of payment, commit for such term as it deemed proper, not to exceed one year. He made application for release under Section 641, Title 18 U.S.C.A., which was denied by the commissioner under the theory that the local statute applying to the police court alone warranted the imprisonment and made the provisions of said Section 641 inapplicable, because the police court was not a court of the United States.

A writ of habeas corpus was quashed by the Supreme Court and an appeal taken from the ruling.

The court held:

"We cannot think it was the intention of Congress to create such a situation as this case presents, or to permit a greater punishment to follow in this local court than elsewhere from a conviction under the National Prohibition Act.

"And the anomaly is heightened by the concurrent jurisdiction of the Supreme Court of the District of Columbia and the police court. For a defendant in such a

charge may be brought to trial in either court at the election of the district attorney. If he elects to proceed in the higher court of general jurisdiction, an indigent convict imprisoned for default. in his fine may be relieved under section 641; while, if he proceeds in the lower court created for the summary trial of petty local offenses, the indigent defendant may find himself in jail for a year, and beyond the help of section 641. In our opinion, such a result was not within the intention of Congress, and does not necessarily follow from a consideration of the statutes involved."

The commissioner for the Fairbanks precinct, aforesaid, was appointed by the judge of this court; is removable by him at pleasure; and his judgments are subject to appeal to the District Court for trial de novo. The commissioner's court was designed to assist the District Court by taking care of the petty offenses. The District Court and the commissioner, as justice of the peace, had concurrent jurisdiction of the matter presented in this case and of all misdemeanors. The penalty for a violation of the game law involved in this case was a maximum of six months in jail or a fine of $500, or both. If the commissioner could sentence an indigent prisoner to six months in prison and in addition thereto 250 days, whereas the District Court could only sentence for the same crime a confinement of six months, plus thirty days in the case of a poor convict, it would bring about a dual procedure of a most novel character.

Assume a case in the commissioner's court with two defendants for the violation of the game law and that each was found guilty and given the maximum sentence of imprisonment and fine. Thereafter, if both defendants were poor convicts, the one who had taken the appeal to the District Court and was being held on a judgment from the District Court could obtain his release after serving thirty days upon his fine, whereas the other

defendant, who was no more culpable, would have to remain in jail 220 additional days.

If the defendant were not given the maximum sentence of imprisonment and fine in the justice's court and feared he might not get the same upon a retrial in the District Court, he could simply permit his appeal to be dismissed, whereupon the District Court would, by statute, be compelled to enter the same judgment as was entered in the justice's court, but it would be a judgment of the District Court and be subject to the provisions of said Section 641, 18 U.S.C.A. This condition might bring many petty cases to the District Court unnecessarily.

■ Dual procedure would give the District Attorney, who has the option of bringing a prosecution in either court, the ability to decide whether a particular defendant was to be subject to a greater or less penalty for the same offense. To give the District Attorney such power would be in effect to permit him to legislate, and even Congress does not have the power to delegate such legislative ability to others.

■ Consequently, it appears that Congress intended that its act, approved May 24, 1935, 49 Stat. 289, 48 U. S.C.A. § 101a, should make Section 641, Title 18 U.S.C.A., applicable to all poor convicts imprisoned solely for the nonpayment of fines in Alaska whether they are confined on a judgment of the District Court or a judgment of a justice of the peace.